UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

AMANDA B.,

              Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

              Defendant.

Case No. C18-6014 RAJ

**ORDER AFFIRMING THE COMMISSIONER'S FINAL DECISION AND DISMISSING THE CASE WITH PREJUDICE**

Plaintiff seeks review of the denial of her applications for Supplemental Security Income and Disability Insurance Benefits. Plaintiff contends the ALJ erred by rejecting her testimony and her treating doctor's opinions. Dkt. 7. As discussed below, the Court **AFFIRMS** the Commissioner's final decision and **DISMISSES** the case with prejudice.

**BACKGROUND**

Plaintiff is currently 39 years old, has at least a high school education, and has worked as a forklift operator, store laborer, salesperson, cashier, and day worker. Dkt. 5, Admin. Record (AR) 27-28. Plaintiff applied for benefits in July 2015. AR 106, 116. She alleges disability as of July 1, 2015. AR 49. Plaintiff's applications were denied initially and on reconsideration. AR 104, 105, 146, 147. After the ALJ conducted hearings in February 2017 and June 2017, the

ALJ issued a decision finding Plaintiff not disabled. AR 39, 92, 15-29.

**THE ALJ'S DECISION**

Utilizing the five-step disability evaluation process,[1] the ALJ found:

**Step one:** Plaintiff has not engaged in substantial gainful activity since the alleged onset date.

**Step two:** Plaintiff has the following severe impairments: cervical, thoracic, and lumbar degenerative disc disease; asthma; and depression.

**Step three:** Plaintiff's impairments do not meet or equal the requirements of a listed impairment.[2]

**Residual Functional Capacity:** Plaintiff can perform light work but cannot climb ladders, ropes, or scaffolds. She can frequently kneel or crouch, and occasionally stoop, crawl, and climb ramps and stairs. She must avoid concentrated exposure to fumes, odors, dusts, and gases. She can perform simple routine tasks defined as a reasoning level no greater than two.

**Step four:** Plaintiff cannot perform past relevant work.

**Step five:** As there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, she is not disabled.

AR 17-29. The Appeals Council denied Plaintiff's request for review, making the ALJ's decision the Commissioner's final decision. AR 1.

**DISCUSSION**

This Court may set aside the Commissioner's denial of Social Security benefits only if the ALJ's decision is based on legal error or not supported by substantial evidence in the record as a whole. *Trevizo v. Berryhill*, 871 F.3d 664, 674 (9th Cir. 2017). Each of an ALJ's findings must be supported by substantial evidence. *Reddick v. Chater*, 157 F.3d 715, 721 (9th Cir. 1998). "Substantial evidence" is more than a scintilla, less than a preponderance, and is such

---

[1] 20 C.F.R. §§ 404.1520, 416.920.
[2] 20 C.F.R. Part 404, Subpart P, Appendix 1.

relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). The ALJ is responsible for evaluating evidence, resolving conflicts in medical testimony, and resolving any other ambiguities that might exist. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). While the Court is required to examine the record as a whole, it may neither reweigh the evidence nor substitute its judgment for that of the ALJ. *Thomas v. Barnhart*, 278 F.3d 947, 954, 957 (9th Cir. 2002). When the evidence is susceptible to more than one interpretation, the ALJ's interpretation must be upheld if rational. *Burch v. Barnhart*, 400 F.3d 676, 680-81 (9th Cir. 2005). This Court "may not reverse an ALJ's decision on account of an error that is harmless." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012).

**A.   Plaintiff's Testimony**

Plaintiff testified she can walk for ten minutes before needing to rest for half an hour. AR 72. She can sit for 15 minutes before needing to stand or walk for 15 minutes or lie down for an hour. AR 73. She can lift five pounds frequently. AR 72. She has difficulty concentrating. AR 73.

Where, as here, an ALJ determines a claimant has presented objective medical evidence establishing underlying impairments that could cause the symptoms alleged, and there is no affirmative evidence of malingering, the ALJ can only discount the claimant's testimony as to symptom severity by providing "specific, clear, and convincing" reasons that are supported by substantial evidence. *Trevizo*, 871 F.3d at 678.

The ALJ discounted Plaintiff's testimony because objective findings were minimal and providers recommended conservative treatment, and because Plaintiff made inconsistent

statements.[3]  AR 25.

### 1. Medical Evidence

"While subjective pain testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence, the medical evidence is still a relevant factor in determining the severity of the claimant's pain and its disabling effects." *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001) (citing 20 C.F.R. § 404.1529(c)(2)).

The ALJ noted mild imaging results, normal gait, full strength, and routinely normal mental status examinations. AR 25, 766, 661. Providers recommended conservative treatment. AR 25, 391, 756. Plaintiff does not challenge the ALJ's finding that the medical evidence does not fully support her testimony, but argues correctly that this finding is not sufficient standing alone to discount her testimony. Dkt. 7 at 3.

### 2. Plaintiff's Inconsistent Statements

An ALJ may discount a claimant's symptom testimony based on "inconsistencies in testimony." *Orn v. Astrue*, 495 F.3d 625, 636 (9th Cir. 2007). In a May 2015 treatment note, Plaintiff described her pain to a provider as "not terrible or debilitating, just irritating and frustrating." AR 641. This was inconsistent with her testimony that, for example, the slightest bump "sends such pain down [her] back, [she] can barely move and [she] want[s] to cry." AR 63. Plaintiff argues that the May 2015 treatment note indicates her pain "is the same," and an

---

[3] The Commissioner argues that the ALJ also based rejection of Plaintiff's testimony on exaggeration and failure to follow treatment recommendations. Dkt. 8 at 3. However, while the ALJ may have noted the evidence the Commissioner cites, these were not reasons on which the ALJ relied. *See* AR 23, 25. The Court reviews the ALJ's decision "based on the reasoning and findings offered by the ALJ—not *post hoc* rationalizations that attempt to intuit what the adjudicator may have been thinking." *Bray v. Comm'r of Soc. Sex. Admin.*, 554 F.3d 1219, 1225 (9th Cir. 1995).

April 2015 treatment note explains that her pain is typically at a level of five out of ten. Dkt. 7 at 4 (quoting AR 641; citing AR 633). Five out of ten is not defined in the treatment notes. *See* AR 633-40. Whether or not five out of ten is the same as "not terrible or debilitating," Plaintiff's hearing testimony was inconsistent with her description of her pain as not debilitating. These inconsistent statements were a clear and convincing reason to discount Plaintiff's testimony.

The ALJ noted that Plaintiff tapered off opioid medication in early 2016. AR 25. Plaintiff argues that this was due to "DEA regulations," not because her pain had decreased. Dkt. 7 at 5 (quoting AR 954). Regardless, Plaintiff does not dispute that she has remained on conservative treatment since that time. An ALJ may discount a claimant's testimony on the grounds that her treating doctor "prescribed only conservative treatment." *Johnson v. Shalala*, 60 F.3d 1428, 1434 (9th Cir. 1995) (internal quotation marks omitted). Conservative treatment was another clear and convincing reason to discount Plaintiff's testimony.

The ALJ found that Plaintiff left her job due to the lack of positions, and continued to look for work while collecting unemployment benefits. AR 25. Stopping work for reasons other than impairments is a valid factor to consider in evaluating a claimant's pain testimony. *See Bruton v. Massanari*, 268 F.3d 824, 828 (9th Cir. 2001). And holding oneself out as available for full-time work is inconsistent with disability allegations. *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1161-62 (9th Cir. 2008). The ALJ's finding that Plaintiff left work for non-impairment related reasons is not supported by substantial evidence. Plaintiff left work "due to lack of positions available that she can do," indicating that her limitations contributed to stopping work. AR 575. Regarding unemployment benefits, however, because Plaintiff points to nothing in the record that suggesting that her condition deteriorated in July 2015, the ALJ reasonably inferred that her impairments after the alleged onset date were the same impairments

she had while she was holding herself out as available for full-time work. "[T]he Commissioner's findings are upheld if supported by inferences reasonably drawn from the record." *Batson v. Comm'r, Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). This further supports the ALJ's discounting of Plaintiff's testimony.

Because the ALJ provided the clear and convincing reasons of inconsistent statements and conservative treatment, further bolstered by a lack of objective clinical findings, inclusion of an erroneous reason was harmless and the Court concludes the ALJ did not err by discounting Plaintiff's testimony. *See Carmickle*, 533 F.3d at 1163.

**B.     Jim Rice, M.D.**

A treating physician's opinion is generally entitled to greater weight than an examining or nonexamining physician's opinion. *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014). An ALJ may only reject the uncontradicted opinion of a treating doctor by giving "clear and convincing" reasons. *Revels v. Berryhill*, 874 F.3d 648, 654 (9th Cir. 2017). Even if a treating doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by stating "specific and legitimate" reasons. *Id.* The ALJ can meet this standard by providing "a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Id.* (citation omitted). "The ALJ must do more than offer his conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct." *Reddick*, 157 F.3d at 725.

In January 2016, Plaintiff's treating physician, Jim Rice, M.D., filled out a Medical Source Statement. AR 688-92. Dr. Rice opined that Plaintiff would have difficulty completing a normal eight-hour workday and "very possibly" would miss more than three days of work per month. AR 688. She could sit for one hour at a time and stand a total of four hours per day, and

would need to alternate sitting and standing. AR 689-91. She could lift 10 pounds frequently and 20 pounds occasionally. AR 690.

The ALJ gave Dr. Rice's opinions "[l]ittle weight" as inconsistent with his own and other medical findings in the record. AR 26. Incongruity between a treating physician's opinions and her own medical records is a "specific and legitimate reason for rejecting" the opinions. *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008). Incongruity with other providers' findings is also a valid reason to discount a medical opinion. *Batson*, 359 F.3d at 1195 (that opinions were "contradicted by other statements and assessments of [claimant's] medical conditions" and "conflict[ed] with the results of a consultative medical evaluation" were specific and legitimate reasons to discount the opinions); *see also Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 601 (9th Cir. 1999) (an ALJ may reject a doctor's opinion that is contradicted by her own and other medical examiners' reports).

### 1. Dr. Rice's Own Treatment Notes

Plaintiff argues that the ALJ did not identify any specific inconsistency. Dkt. 7 at 5. However, the ALJ properly "set forth the reasoning behind [her] decision in a way that allows for meaningful review." *Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015). The ALJ stated that Dr. Rice's opinions were inconsistent with his own treatment notes, "which, as discussed in this decision, show[] … minimal clinical findings, routine observations of a normal gait…, and largely conservative treatment." AR 26. Throughout the decision, the ALJ referred to Dr. Rice's findings. For example, in treatment notes from May and June 2015, Plaintiff had "a normal gait and had normal alignment and mobility of her head and neck." AR 21 (citing AR 644); AR 22 (citing AR 653). In July 2016, Plaintiff had a normal gait. AR 24 (citing AR 952). In December 2015, Dr. Rice instructed Plaintiff to taper off her hydrocodone. AR 22 (citing AR

972). These examples provide substantial evidence supporting the ALJ's finding that Dr. Rice's opinion of complete disability was inconsistent with his relatively mild clinical findings and conservative treatment recommendations. *See Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir. 2001) (affirming ALJ's rejection of doctor's opinion of total disability where doctor "prescribed a conservative course of treatment").

Inconsistency with his own treatment notes was a specific and legitimate reason to discount Dr. Rice's opinions.

### 2. Other Medical Sources' Findings

#### a. Imaging

The ALJ found that imaging results were generally mild. AR 26, 21. Neurosurgeon Peter G. Brown, M.D., reviewed imaging results from February 2012, August 2013, and March 2014, that showed "mild" and "small" changes, and concluded that he did "not see anything dangerous in her imaging studies." AR 390-91.

Plaintiff argues that the ALJ's finding of mild imaging results is inconsistent with March 2012 and October 2015 imaging studies that use the word "moderate." Dkt. 7 at 6 (citing AR 667 and 751). The 2012 study found "[m]oderate" thoracic spondylosis and concluded there was "[m]ild to moderate" mid thoracic disc disease. AR 752. The 2015 study listed a finding of "moderate" degenerative loss of disc space height, however, the conclusions only noted "[m]ild" degenerative disc disease. AR 668.

It is the ALJ's responsibility to weigh the evidence and resolve conflicts in medical evidence. *Andrews*, 53 F.3d at 1039. Conflicts in the evidence are to be expected, but these two examples do not so greatly outweigh the examples the ALJ cited as to deprive the ALJ's findings of substantial evidence. Reviewing the record as a whole, the ALJ did not cherry-pick or take

the imaging results out of context. *See Ghanim v. Colvin*, 763 F.3d 1154, 1164 (9th Cir. 2014). Mild imaging results provided another specific and legitimate reason to discount Dr. Rice's opinion of total disability.

### b. Other Clinical Findings

The ALJ relied on numerous clinical findings of normal gait, normal head and neck alignment and mobility, full range of motion, and normal muscle strength. AR 21-25 (citing AR 644, 653, 952, 661, 856, 791, 952, 911, 1063). Plaintiff argues that the ALJ's finding of "minimal clinical findings" is contradicted by one treatment note observing diminished reflexes, one observing severe lumbar spasm, and one observing "stiff" gait. Dkt. 7 at 6 (quoting AR 26). Comparing the numerous findings cited by the ALJ with the three findings cited by Plaintiff falls well within an ALJ's purview to weigh the evidence and resolve conflicts. *See Andrews*, 53 F.3d at 1039. Out of more than 700 pages in the medical record, these three examples, even together, do not contradict the ALJ's finding that the clinical abnormalities were "minimal." *See* AR 389-1117. Minimal clinical abnormalities provided another specific and legitimate reason to discount Dr. Rice's opinions.

### c. Conservative Treatment

Plaintiff argues that the ALJ erred by discounting Dr. Rice's opinions based on conservative treatment, because she had epidural steroid injections. Dkt. 7 at 7. Neurosurgeon Dr. Brown stated, "I do think it is reasonable for the patient to go ahead with the epidural steroid injections as her pain provider has suggested. I would suggest continued conservative treatment." AR 391. If Plaintiff's neurosurgeon felt that injections were consistent with conservative treatment, the ALJ was entitled to conclude the same. Moreover, even if injections were not conservative treatment, Plaintiff only had a few injections over multiple years of

alleged disability.  Finally, even if conservative treatment by other providers were an erroneous reason to discount Dr. Rice's opinions, the ALJ provided several other specific and legitimate reasons to discount his opinions.

The Court concludes the ALJ did not err by discounting Dr. Rice's opinions.

## CONCLUSION

For the foregoing reasons, the Commissioner's final decision is **AFFIRMED** and this case is **DISMISSED** with prejudice.

DATED this 24th day of June, 2019.

*Richard A. Jones*

The Honorable Richard A. Jones
United States District Judge